## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DERRICK CAIN,**

              **Plaintiff,**                **CIVIL ACTION NO. 04-CV-74765-DT**

   **vs.**

                                     **DISTRICT JUDGE NANCY G. EDMUNDS**

**MDOC, et. al.,**                   **MAGISTRATE JUDGE MONA K. MAJZOUB**

              **Defendants.**

_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:**  Plaintiff's Amended Complaint should be **DISMISSED** without prejudice *sua sponte*  pursuant to 42 U.S.C. § 1997e(c)(1) for failure to state a claim upon which relief may be granted.  Plaintiff's 42 U.S.C. § 2000cc claim and state negligence claim should also be dismissed without prejudice.  Defendants' Motion to Transfer Venue (Docket # 18) and Motion for Summary Judgment (Docket # 27) should be **DENIED** as moot.  Finally,  Plaintiff's Motions for Injunctive Relief, Cross-Motion for Summary Judgment, and  Motion to Supplement his Cross-Motion for Summary Judgment (Docket ## 5, 25, 38, 43) should be **DENIED** as moot.

## FACTS

       Plaintiff was allowed to proceed *in forma pauperis* and on December 20, 2004 filed a prisoner civil rights complaint, pursuant to 42 U.S.C. § 1983, with a motion for injunctive relief.  On March 21, 2004 Plaintiff filed an amended complaint pursuant to 42 U.S.C. §§ 1983 and 2000cc (Religious Land Use and Institutionalized Persons Act or "RLUIPA"), alleging various constitutional violations as well as negligence under Michigan state law.  He seeks monetary damages and both declaratory and injunctive relief.  The Defendants to this action are: Michigan Department of Corrections ("MDOC"); MDOC Director Patricia Caruso; former MDOC Director William Overton; MDOC Special Activities

Coordinator Dave Burnett; St. Louis Correctional Facility ("SLF") Warden Paul Renico; SLF Chaplain Carron Caldwell; SLF Food Service Director Scott Smith; SLF Assistant Food Service Director Bill Black; Carson City Correctional Facility ("DRF") Warden Kurt Jones; DRF Assistant Food Service Supervisor Gary Dutcher; Southern Michigan Correctional Facility ("JMF") Warden S.L. Burt; and Duane Waters Hospital Dietary Manager Sharon Fairbanks.  Plaintiff has sued Defendants MDOC, Overton, Caruso, and Burnett in their official capacities.  Defendants Renico, Caldwell, Smith, Black, Jones, Dutcher, Burt, and Fairbanks are sued in their individual capacities.  In March 2005 Defendants filed a motion to transfer venue to which Plaintiff responded.  Plaintiff subsequently filed another motion for injunctive relief on April 4, 2005.  On April 25, 2005 Defendants filed a Motion for Summary Judgment.  Plaintiff filed a Response and also moved for cross-summary judgment on May 23, 2005.  Plaintiff then filed a motion to supplement his pleadings with regard to his May 23rd response and motion, which we construe as a motion to amend his cross-summary judgment motion.  Plaintiff filed an additional motion for injunctive relief on November 30, 2005.  The case has been referred to the undersigned for all pretrial proceedings.

Plaintiff converted from Islam to the Shetaut Neter religion in late 2002 while housed at the Saginaw Correctional Facility.  He now practices the Ausarian religion, which finds its basis in the tenets of  the Shetaut Neter religion.  (Am. Compl. at ¶¶ 8, 12-13 ).  A strict vegetarian ("vegan") diet is a central tenet of Plaintiff's religion.  *Id.* at ¶¶ 10-11.

In February 2003 Plaintiff was housed at SLF, an MDOC facility that does not provide a vegan menu.  While all MDOC facilities serve a lacto-ovo (dairy-egg) vegetarian menu, only certain facilities regularly provide a vegan menu.  Plaintiff's Ausarian religion allegedly prohibits the consumption of eggs and dairy food.  Consequently, he has had to either purchase his own food when SLF did not serve vegetables as part of its main menu or forego a proper meal altogether.  (Am. Coml. at ¶¶ 13-16).

-2-

Plaintiff then learned that he could receive a vegan diet if he demonstrated that it was necessary for his religious practice. *Id.* at ¶¶ 16-17. In accordance with MDOC Policy Directive 05.03.150 entitled "Religious Beliefs and Practices of Prisoners", Plaintiff submitted a request to Chaplain Caldwell and SLF Warden Renico for the vegan diet based upon his religious beliefs as an Ausarian follower. Chaplain Caldwell sent Plaintiff a change of religious preference form and questionnaire pertaining to Plaintiff's religious beliefs. On the preference form Plaintiff designated his religion as "Ausarian."[1] Plaintiff supplemented the questionnaire with a two page correspondence to Chaplain Caldwell detailing his religious beliefs. (*Id.* at ¶ 19; Exs. 8, 30-31; Defs.' Mot. for Summ. J. at Exs. A-C).

On March 27, 2003 Chaplain Caldwell interviewed Plaintiff about his request for a vegan diet. According to Plaintiff, Chaplain Caldwell told him that he needed to adequately explain his beliefs about his religion on the questionnaire form itself and that she would not submit his two-page correspondence to Special Activities Coordinator ("Coordinator") Burnett in lieu of the questionnaire. A final decision regarding whether an inmate would receive a special religious diet is made by Coordinator Burnett. Plaintiff alleges that Chaplain Caldwell crossed out the name of his religion on the preference form and wrote "other" and Plaintiff's religious preference was then entered into the Corrections Management Information System ("CMIS") as "other." (Am. Compl. at ¶¶ 17, 23-25). Plaintiff's questionnaire regarding his request for a strict vegetarian diet was faxed to Coordinator Burnett for review. A letter from Chaplain Caldwell stating that Plaintiff did not cooperate in the interview and insisted on submitting more paperwork with his answers accompanied the questionnaire. Coordinator Burnett subsequently denied Plaintiff's request for a strict vegetarian diet because Plaintiff did not cooperate in

---

[1]     By way of explanation Plaintiff wrote on the questionnaire that a strict vegetarian diet was required by his religion because "it is a way of life", that "God within God" was a major teaching of his religion, and that his religion teaches "life." (Defs.' Mot. for Summ. J. at Ex. D).

the interview process and because Plaintiff had not provided sufficient answers underlying his religious beliefs and the need for the vegan diet. (Defs.' Mot. for Summ. J. at Exs. D-E).

On April 21, 2003 Coordinator Burnett reconsidered Plaintiff's request for a vegan diet and again denied Plaintiff's request. Coordinator Burnett concluded that Plaintiff had again failed to demonstrate an understanding of his faith and its dietary requirements. Pursuant to MDOC policy, Plaintiff could not reapply for the vegan diet for another year. (Am. Compl. at ¶ 32; Exs. 14, 61).

Plaintiff was transferred to DRF on April 24, 2003. DRF also does not serve a regular, vegan menu. *Id.* at ¶ 31. Plaintiff sent a letter to DRF Warden Jones requesting a vegan diet. Warden Jones responded to Plaintiff that the vegan diet requested by Plaintiff would not be provided because the request had previously been denied by Coordinator Burnett. (Defs.' Mot. for Summ. J. at Exs. N-O).

On July 24, 2003 Plaintiff was transferred to JMF, which also does not regularly serve a vegan menu. On July 31, 2003 Plaintiff was seen by Dr. Aydar for medical issues, including lack of energy, dizziness and weight loss. According to Dr. Aydar's notes, Plaintiff stated that he wanted a vegan diet for religious reasons and that consequently he was not getting adequate nutrition. Dr. Aydar referred Plaintiff to Dietician Fairbanks for evaluation and she requested an order for a strict vegetarian diet for 180 days. Plaintiff alleges that he never received the prescribed diet. (Am. Compl. at ¶ 36; Exs. 74-75, 119).

Plaintiff was medically evaluated on August 14, 2003 by Dr. Faghihnia. According to the doctor's notes, Plaintiff again requested a vegan diet but it appears that Dr. Faghihnia determined that such a diet was not medically necessary. The doctor referred Plaintiff to a dietician and noted that he would continue to monitor Plaintiff's weight monthly. If such a diet became medically necessary, the doctor would attempt to facilitate Plaintiff's transfer to a facility that offered the diet. *Id.* at Exs. 102-103, 119.

-4-

Plaintiff was transferred back to SLF in January 2004. *Id.* at ¶ 48; Ex. 148. While at SLF, Plaintiff submitted two letters to Chaplain Caldwell and Warden Renico requesting that the warden authorize inmates to order religious books from a vendor named B.B.P.D. Publishers, and for permission to order two religious books from that vendor. MDOC Policy Directive 05.03.118 only permits inmates to order and receive books from certain authorized vendors but the warden has authority to add vendors. *Id.* at ¶ 51; Exs. 159, 165, 197-99, 212-213. Plaintiff contends that because he had received no response from the warden or chaplain as of April 2004, he decided to order the two books. A money disbursement for these books was approved and they were shipped to Plaintiff. However, SLF mailroom staff rejected the books once they arrived because they were not from a pre-approved vendor. *Id.* at ¶¶ 52, 56; Exs. 192.

On April 9, 2004 Chaplain Caldwell interviewed Plaintiff a second time regarding his request for a vegan diet. (Am. Compl., at ¶¶ 60-61). After the interview, Chaplain Caldwell wrote to Coordinator Burnett and stated that Plaintiff talked about what food not to eat but did not articulate how this information related to his faith. She also indicated that Plaintiff told her his religion was "other," that it would violate his religion to eat animal products, and that he could eat dairy foods but not seafood, honey, eggs or fish. Chaplain Caldwell stated that she did not recommend the vegan diet for Plaintiff. (Defs.' Mot. for Summ. J. at Ex. Q).

On April 16, 2004 Coordinator Burnett denied Plaintiff's request for a vegan diet. *Id.* at Ex. R. In June 2004 Plaintiff wrote to Coordinator Burnett to appeal the April 16th denial of his request for a vegan diet. Plaintiff included fourteen pages of literature pertaining to his religious beliefs. After reviewing the material, Coordinator Burnett wrote Plaintiff a letter indicating that he would not reconsider the initial denial and that he did not read anything in the literature that suggested that his

faith forbade him from eating animal products.  Plaintiff was also told that he could not apply for the vegan diet again for another year.[2]  (Am. Compl. at ¶¶ 68-71; Defs.' Mot. for Summ. J. at Exs. S-T).

In September 2004 Plaintiff submitted a book order for the purchase of various religious books from the books' publisher.  An SLF case manager refused to process the order and sent the order to Chaplain Caldwell for approval.  (Am. Compl. at ¶ 75; Defs.' Mot. for Summ. J. at Ex. V).  Plaintiff initiated the instant case a month later.

## EXHAUSTION OF REMEDIES

Defendants have not moved to dismiss the Plaintiff's Amended Complaint for his failure to totally exhaust each of his section 1983 claims.  Accordingly, the Court should dismiss Plaintiff's Amended Complaint *sua sponte*.  The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action.  Specifically, the statute provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has declined to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  The Sixth Circuit has held that "prisoners filing a § 1983 case involving prison conditions must allege and show that they have exhausted all available state administrative remedies" before a district court may adjudicate their civil rights claims, and has also held that the district court should enforce this requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998), *cert. denied*, 525 U.S. 833 (1998).  The Sixth Circuit requires prisoners to exhaustion all claims against each named defendant before proceeding on a section 1983

---

[2]     In April 2005 Plaintiff resubmitted his request for the vegan diet and Coordinator Burnett approved the diet. (Defs.' Mot. for Summ. J. at Ex. W).

action. *Jones-Bey v. Johnson*, 407 F.3d 801, 806-809 (6th Cir. 2005). Under the total exhaustion rule announced in *Jones-Bey*, a court must entirely dismiss a mixed complaint containing both exhausted and unexhausted claims.

Generally, a prisoner will exhaust administrative remedies by filing grievances pursuant to MDOC policy. For example, a prisoner may grieve alleged violations of policy and procedure, unsatisfactory conditions of confinement, official acts, or denial of rights. (MDOC Policy Directive 03.02.130, PB). The grievance system is comprised of three steps. If the grievant is dissatisfied with the step I response, he/she may appeal to step II. If the prisoner is still dissatisfied with the step II response, he/she may file a step III appeal with the Director of the MDOC. A Plaintiff must pursue all levels of the administrative procedure, even when prison officials fail to respond or respond in an untimely manner. *Grabinski v. Gundy*, 1999 U.S. Dist. LEXIS 4820 (W.D. Mich. 1999)(citations omitted).

Here, Plaintiff alleges that all of the Defendants, with the exception of MDOC,[3] violated his First, Eighth and Fourteenth Amendment constitutional rights by denying him a religious diet and by failing to provide him with adequate meals. (Am. Compl. at ¶¶ 76-77, 80-86, 88-94). Plaintiff attached copies of nine grievances that were exhausted from Step I through III as to these claims. The grievance forms are as follows: SLF03030091717a, *Id.* at Exs. 20-24 (grievance against Defendant Renico); SLF0303009520e, *Id.* at Exs. 25-29 (grievance against Defendants Overton and Renico); SLF03040102328a, *Id.* at Exs. 32-35 (grievance against Defendants Renico, Overton and Caldwell);

---

[3]      As to Defendant MDOC, Plaintiff claims that MDOC policy 05.03.150 unreasonably requires a government agent to make subjective determinations regarding an inmates beliefs. He also contends that the policy causes unequal treatment for those who practice a religion categorized as "other". (Am. Compl. at ¶¶ 90-92). Insofar as it is the content of the policy that Plaintiff challenges, it is eminently clear from the plain reading of MDOC Policy Directive 03.02.130 (*Id.* at Ex. 167) that Plaintiff is precluded from grieving the substance of the policy, and consequently is equally relieved of any duty to exhaust his remedies before filing the appropriate legal cause of action. *Murphy v. Martin*, 343 Fed. Supp. 2d 603, 605, 608 (E.D. Mich. 2004).

SLF03040102020e, *Id.* at Exs. 36-40 (grievance against Defendants Overton and Renico); SLF03040111920z, *Id.* at Exs. 42-46 (grievance against Defendant Caldwell); SLF03040108209d (grievance against Defendant Renico) *Id.* at Exs. 47-50; DRF0306069709b, *Id.* at Exs. 70-73 (grievance against Defendants Overton, Burnett and Jones); SLF0401021909d, *Id.* at Exs. 154-58 (grievance against Defendants Caruso, Overton, Burt, Renico, Black, Smith, Jones, Dutcher, Fairbanks, and Burnett) *Id.* at 154-58.

Plaintiff further claims that his Fourteenth Amendment rights were violated by Defendants Caldwell and Renico because they refused to authorize B.B.P.D. as a religious book vendor. B.B.P.D. sells books pertaining to Ausarian beliefs. Plaintiff contends Defendants have pre-authorized many book vendors for various other religions. *Id.* at ¶¶ 78, 87. Plaintiff has shown total exhaustion of this claim in grievance SLF04030081920c. (Am. Compl. at Exs. 205-09).

Plaintiff additionally argues that Defendants Burnett and Caldwell retaliated against him for his filing of a previous lawsuit and various grievances in violation of his First Amendment rights. Plaintiff further claims that Defendants Burnett and Caldwell purposely ensured that he was denied a religious diet as retaliation. *Id.* at ¶¶ 79, 82. This claim has been exhausted as seen in the Step I, II, and III grievance forms numbered SLF0402046620e and SLF04040096520a submitted by Plaintiff as exhibits. (Am. Compl. at Exs. 183-87, 218-222).

Plaintiff also claims that Defendant Caldwell intentionally refused to approve B.B.P.D. as a religious book vendor for him and withheld religious book orders from him and that her actions were retaliatory. *Id.* at ¶ 79. Plaintiff has failed to attach any grievance forms indicating Plaintiff actually exhausted his administrative remedies as to these retaliation claims. Plaintiff has also failed to allege exhaustion of these claims with specificity. Plaintiff has therefore failed to demonstrate exhaustion of his administrative remedies as required. Under the PLRA, a Plaintiff who fails to allege and demonstrate

exhaustion does not state a claim on which relief may be granted and his complaint must be dismissed. *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002). Because Plaintiff has not exhausted all of his claims, his entire complaint must be dismissed without prejudice pursuant to 42 U.S.C. 1997(e)(1). *Jones-Bey v. Johnson*, 407 F.3d at 806-10.

Accordingly, the Court recommends that Plaintiff's Complaint be **DISMISSED** without prejudice pursuant to 42 U.S.C. § 1997e(c)(1).[4] The undersigned also recommends that Plaintiff's RLUIPA and state negligence claims be dismissed without prejudice.[5] In light of the instant recommendation, Defendants' Motion to Transfer Venue (Docket # 18) and Motion for Summary Judgment (Docket # 27) and Plaintiff's Motions for Injunctive Relief, Cross-Motion for Summary Judgment, and Motion to Supplement his Cross-Motion for Summary Judgment (Docket ## 5, 25, 38, 43) should **DENIED** as moot.

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation,

---

[4]     Title 42 U.S.C. § 1997e(c)(1) provides:

The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

[5]     The Supreme Court recently noted that prisoners may not sue prison officials under RLUIPA without first exhausting all available administrative remedies as required by section 1997e(a). <u>See</u> <u>Cutter v. Wilkinson</u>, 125 S. Ct. 2113, 2123 n. 12 (2005). As such, if this Court agrees with the recommendation contained herein that Plaintiff's section 1983 claims be dismissed without prejudice for failure to exhaust his administrative remedies, then Plaintiff's RLUIPA claims should also be dismissed without prejudice. Furthermore, a court may decline to exercise supplemental jurisdiction over a Plaintiff's state law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). If Plaintiff's section 1983 and RLUIPA claims are dismissed without prejudice, it is judicially economical to address these issues with his federal claims if Plaintiff should choose to file a new complaint after total exhaustion has occurred. *Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F. 3d 542, 546 (6th Cir. 1999) (holding that district court did not abuse its discretion when dismissing plaintiff's state law claims when it had dismissed all federal claims over which it had original jurisdiction).

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932

F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might

have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th

Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must

recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten

days after service of an objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each issue raised in the

objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2,"

etc.


Dated: February 14, 2005                  s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE


**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Derrick Cain
and Counsel of Record on this date.

Dated: February 14, 2006                  s/ Lisa C. Bartlett
                                          Courtroom Deputy

-10-